CLASSIC THEATRE CORPORATION, Appellant, *v.* NATHAN
L. AMSTER, Respondent, Impleaded with Another.

**Contract — purchase of one-quarter interest in theatrical
venture with agreement that part of purchase price would be
returned if play did not run certain time and produce certain
gross receipts — action to recover share of loss — construction
of contract.**

In an action to recover a share of the loss on a theatrical venture,
under a written agreement whereby de endant purchased from plain-
tiff a one-quarter interest in a play, together with scenery and costumes
and was to share to the extent of twenty-five per cent in the profits or
losses of the production but containing a provision that if the play
did not run for longer than four weeks and the gross receipts for the
fourth week did not amount to a stated sum then the plaintiff would
return to defendant five hundred dollars of the purchase price, the
agreement should be read as one of a theatrical venture wherein the
defendant bought a twenty-five per cent interest not only in the profits,
but in the property, and was to be liable for twenty-five per cent of
the losses.   If the play only ran four weeks or less he was to be allowed
five hundred dollars out of his purchase price.   This would be added
to his profits, if there were any, and taken out of his share of the losses,
should the venture be unsuccessful.

*Classic Theatre Corp.* v. *Amster*, 212 App. Div. 812, reversed.

(Submitted June 3, 1925; decided July 15, 1925.)

APPEAL, by permission, from a judgment of the Appel-
late Division of the Supreme Court in the first judicial
department, entered February 2, 1925, affirming a judg-
ment in favor of defendant entered upon an order of
Special Term granting defendant-respondent's motion
for a dismissal of the complaint.

*Abraham H. Sarasohn* for appellant.   The courts below
erred in making or substituting a different contract than
that made by the parties hereto.   (*Jermyn* v. *Searing*,
225 N. Y. 541; *Matter of Loew's Buffalo Theatres*, 233
N. Y. 495.)

*Walter S. Hilborn* and *David J. Gallert* for respondent.

CRANE, J.  The plaintiff sued the defendant on a written agreement to recover his share of the losses on a theatrical venture.  The courts below have interpreted this agreement as creating no such liability.  As we have come to a different conclusion it is necessary to set forth this agreement and then state the meaning which we give to it.

" AGREEMENT made and entered into this 10th day of April, 1923, by and between NATHAN L. AMSTER of the City of Boston, State of Massachusetts, party of the first part, and CLASSIC THEATRE CORPORATION, a corporation created and existing under and by virtue of the laws of the State of New York, party of the second part.

" WHEREAS the party of the second part is the owner of the scenery used in connection with the production of the play called ' Anathema,' and is about to produce the said play upon the English speaking stage, with Maurice Schwartz as star or leading actor; and is the owner of the right to produce said play in English, the repertoire and stock rights, and a one-half interest in the motion picture rights of said play, subject to the payment of a five per cent. royalty in the gross receipts.

" IT Is NOW AGREED by and between the said parties hereto as follows:

" 1. The said party of the first part has paid to the party of the second part, at or before the signing and delivery of this instrument, the receipt whereof is hereby acknowledged, the sum of Three thousand    ($3,000) dollars, in payment for a one-quarter or twenty-five (25%) per cent. interest in and to the rights to produce said play in English and to any and all profits that may be earned in the production of the said play upon the English speaking stage as aforesaid, and one-quarter of the receipts for stock and repertoire rights, and also in payment of a twenty-five per cent. interest in the scenery now used in said production, and in any new costumes

or fixtures that·may be used in said production; which is hereby transferred, assigned and set over to the party of the first part, and it is agreed between the parties hereto that the said party of the first part the defendant Amster shall be entitled to have a one-quarter or twenty-five (25%) per cent. share of any and all profits that may accrue in the production of said play upon the English speaking stage, and in the leasing for stock and repertoire productions, and he shall also bear any losses that may occur in the production of said play upon the English speaking stage, in the same share or part and to the extent of twenty-five (25%) per cent. or one-quarter of any and all of said losses, it being expressly agreed between the parties hereto that in the event that the run of the said play upon the English speaking stage is not longer than four weeks, or that the run of said play is limited to four weeks, and if the gross receipts for said play during said fourth week does not amount to Nine thousand ($9,000) dollars, then and in either of said events the party of the second part must return to the party of the first part, the sum of Five hundred ($500) dollars of said Three thousand ($3,000) dollars, paid in as aforesaid.

" 2. It is further agreed between the parties hereto that the salary of the said star or leading actor during the production of said play upon the English speaking stage, shall be Five hundred ($500) dollars, per week, which sum shall be considered an expense incidental to the production of said play upon the English speaking stage.

" 3. It is further agreed that the party of the first part shall have twenty-five (25%) per cent. or a one-quarter interest of the fifty (50%) per cent. interest in the motion picture rights of said play, now held by the said party of the second part; namely, the said party of the first part shall be entitled to one-eighth, or twelve-and-a-half (12½%) per cent. of any profits that may be made by or from motion pictures of said play.

31

"4. It is further agreed between the parties hereto that the party of the first part contributes the sum of Five hundred ($500) dollars, and the party of the second part contributes the sum of Fifteen hundred ($1,500) dollars, which combined sum shall be used as a working capital for the carrying on of the business for the production of the said play upon the English speaking stage, and the said sum of Two thousand ($2,000) dollars, contributed as aforesaid, shall remain as the working capital of said enterprise; and said respective sums shall be returned to said respective parties at the termination of the said enterprise; or in the event of a loss, the proportionate share of said respective sums shall be returned to said parties; and that all receipts or income during the production of said play upon the English speaking stage and all receipts for stock and repertoire rights, shall be deposited in a bank account in the joint names of Martin Schwartz and Joseph Lawren, and checks and drafts upon the said account shall be signed by both of said parties jointly, and the profits of said enterprise shall be divided on Monday of each week.

"*In Witness Whereof* the parties hereto have hereunto set their hands and seals the day and year first above written.

"By [S]  NATHAN L. AMSTER
"      [S]        JOSEPH L. LAWREN,
                        "*Agent and attorney in fact*
"CLASSIC THEATRE CORPORATION,
                "By [S]  MAURICE SCHWARTZ,
                                *President.*

"Witness:
    "[S]    ABRAHAM H. SARASOHN."

The party of the first part is the defendant in this action. The party of the second part is the plaintiff.

Analyzing the agreement we find that the defendant paid to the plaintiff the sum of $3,000 for which he received

one-quarter interest in the play called " Anathema," and in the profits to be earned upon its production. This is not all. He also received one-quarter of the receipts for stock and repertoire rights, and a one-quarter interest in the scenery used in the production and in the new costumes and fixtures. By the agreement these property rights were transferred and assigned to him. What were the defendant's privileges and obligations? He was to have one-quarter share in all profits to accrue in the production of the play upon the English speaking stage " and he shall also bear any losses that may occur in the production of said play upon the English speaking stage, in the same share or part and to the extent of twenty-five (25%) per cent. or one-quarter of any and all of said losses." In other words, for $3,000 he got one-quarter interest in the play called " Anathema " together with scenery and costumes and was to share to the extent of twenty-five (25%) per cent in the profits or losses of the production upon the English speaking stage. A concession was made however; the parties added this clause; " * * * it being expressly agreed between the parties hereto that in the event that the run of the said play upon the English speaking stage is not longer than four weeks, or that the run of said play is limited to four weeks, and if the gross receipts for said play during said fourth week does not amount to Nine thousand ($9,000) dollars, then and in either of said events, the party of the second part (the plaintiff) must return to the party of the first part, (defendant) the sum of Five hundred ($500) dollars of said Three thousand ($3,000) dollars, paid in as aforesaid."

Notice should be taken here of the omission to state anything in this clause regarding a loss. The clause does not refer to a loss or to a profit. In the event that the play did not run for longer than four weeks or was limited to four weeks and the gross receipts in the fourth week did not amount to more than $9,000, then the defendant

was to get back $500.  He would be entitled to a reduction of $500 in the purchase price even if there had been a *profit* in a three weeks' run.

The courts below have construed this clause to mean that if there were a loss in the production of the play for less than four weeks, no matter how great the loss was, the defendant would lose $2,500 of the amount he had put in and no more.  But he put in $3,000.  Would the plaintiff be obliged to pay him back $500 besides standing all the loss?  If this is what the parties had in mind, why did they say that the defendant was to share one-quarter of the losses?  If one-quarter of the loss was to be limited to $2,500 of the amount he put in, it would have been very easy and simple to have so expressed it.  What, we may ask, becomes of the defendant's one-quarter interest in the play rights and stage property?  We read this agreement as one of a theatrical venture wherein the defendant bought a twenty-five (25%) per cent interest not only in the profits, but in the property, and was to be liable for 25 per cent of the losses.  If the play only ran four weeks or less he was to be allowed $500 out of his purchase price.  This would be added to his profits, if there were any, and taken out of his share of the losses, should the venture be unsuccessful.

By this interpretation we give effect to every clause in the agreement according to the terms and words used by the parties.  It is a formal agreement apparently drawn up with some care.  The courts are asked to construe it.  The parties differ as to its construction.  The plaintiff has paid a loss alleged to be over $13,000.  Naturally the defendant wants to pay as little of this as possible.  He construes this agreement one way, the plaintiff another.  When such differences have arisen, and the events have occurred which require the courts to determine between such parties the share of loss which each must pay, it is wise as well as reasonable to follow closely the words and phrases used by the parties in making the agreement

before the event happened and to give to those words and phrases their natural meaning limiting them to the conditions expressed.

For these reasons the judgments below must be reversed, with costs in all courts and the motion for judgment on the pleadings denied, with costs.

McLaughlin, J. (dissenting): Its a trite saying that parties make contracts and the court discharges its full duty by construing the same according to their intentions. (*Gillet* v. *Bank of America,* 160 N. Y. 549.) This saying is especially applicable to the present case.

The plaintiff and the defendant about to enter into a theatrical venture executed a written contract, a copy of which is set forth in the prevailing opinion by which the respondent Amster sought to limit in case of the failure of the venture his loss. The intent to do so is so clearly expressed that it is difficult to see how there can be the slightest doubt about it. After providing that the respondent was to contribute, which he did towards the venture, $3,000, it was expressly stated that his loss if such occurred was limited to $2,500 and in event of such loss $500 of the $3,000 was to be returned to him. If language means anything this is precisely what the parties intended. This is the provision in the contract, viz., " it being expressly agreed between the parties hereto that in the event that the run of said play upon the English speaking stage is not longer than four weeks, or that the run of said play is limited to four weeks, and if the gross receipts for said play during said fourth week does not amount to Nine thousand ($9,000.00) dollars, then and in either of said events, the party of the second part " (the plaintiff), " must return to the party of the first part," (the respondent), " the sum of Five hundred ($500.00) dollars of said Three thousand ($3,000.00) dollars, paid in as aforesaid."

The run of the said play upon the English speaking

stage did not continue for four weeks. The gross receipts for said play during said fourth week did not amount to nine thousand ($9,000) dollars. The play only ran three weeks. Therefore, according to the express provisions of the contract quoted, the respondent's loss incurred by the venture was limited to twenty-five hundred ($2,500) dollars, and it cannot by a forced and unwarranted construction make the respondent liable for twenty-five per cent of the loss. If it can be done then the court makes a contract which the parties themselves did not intend to make.

I am of the opinion that the judgment appealed from should be affirmed, with costs.

HISCOCK, Ch. J., CARDOZO, POUND, ANDREWS and LEHMAN, JJ., concur with CRANE, J.; McLAUGHLIN, J., reads dissenting memorandum.

Judgments reversed, etc.